IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**DEBORAH HARRIS JIVIDEN,**

    **Plaintiff,**

**v.**                                                   **CASE NO. 2:10-cv-00237**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Deborah Harris Jividen (hereinafter referred to as "Claimant"), filed an application for SSI on May 31, 2006, alleging disability as of May 31, 2003, due to carpal tunnel syndrome, cervical arthritis, stomach problems, an ovarian cyst and back pain. (Tr. at 149-52, 187, 201.) The claim was denied initially and upon reconsideration. (Tr. at 84-88, 91-93.) Claimant requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. at 94.) The hearing was held on February 14, 2008, before the Honorable Ronald Chapman. (Tr. at 27-81.) By decision dated March 24, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-26.) The ALJ's decision became the final decision of the Commissioner on January 6, 2010, when the Appeals Council considered additional evidence from the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 1-4.) On March 5, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2008).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

  In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in

substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, chronic cervical strain with cervical spondylosis, chronic lumbosacral strain and carpal tunnel syndrome. (Tr. at 14.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 19.) Claimant has no past relevant work. (Tr. at 24.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as sales attendant, price marker, cleaner, light office, which exist in significant numbers in the national economy. (Tr. at 25.) On this basis, benefits were denied. (Tr. at 26.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was fifty-one years old at the time of the administrative hearing. (Tr. at 32.) Claimant completed the eighth grade and later earned her GED. (Tr. at 77-78.) Claimant has no past relevant work within the last fifteen years. (Tr. at 36-40.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Evidence before the ALJ

The record includes treatment notes from Cross Lanes Urgent Care dated March 11, 2003, where Claimant was treated for bronchitis and rhinitis. (Tr. at 239.)

On June 3, 2003, Claimant underwent an EMG and was diagnosed

with carpal tunnel syndrome, severe on the left, mild on the right. (Tr. at 240.)

The record includes treatment notes and other evidence from Modern Medicine Clinic dated May 20, 2003, through September 29, 2003. (Tr. at 241-60.) X-rays of the cervical spine showed degenerative facet changes inferiorly. (Tr. at 257.) Claimant was treated for carpal tunnel syndrome. (Tr. at 241-47.) The record contains work excuses for the time periods from May 15, 2003, through October 31, 2003, due to carpal tunnel syndrome, nausea and diarrhea. The treatment notes indicate that on August 18, 2003, Claimant's workers' compensation claim was denied. (Tr. at 243.) On September 30, 2003, Claimant's hands were "slowly getting better." (Tr. at 241.) On November 5, 2003, Claimant was given a certificate to return to work. (Tr. at 249-56.)

On April 11, 2005, Francis Saldanha, M.D. conducted a consultative examination. Dr. Saldanha's impression was carpal tunnel syndrome, worse on the left side. (Tr. at 267.)

On June 10, 2005, Claimant reported to the emergency room complaining of back pain after lifting. Claimant was diagnosed with acute back strain. (Tr. at 269-70.)

On June 6, 2006, Mareda L. Reynolds, M.A. conducted a consultative mental examination. Claimant reported receiving inpatient alcohol treatment on three occasions in the 1990s. Claimant has been arrested five times for DUI and convicted three

times. Her last conviction was in 1994. Claimant reported consuming two to four beers on a daily basis. (Tr. at 275.) Ms. Reynolds diagnosed alcohol dependence and depressive disorder, not otherwise specified on Axis I and made no Axis II diagnosis. (Tr. at 277.)

On August 28, 2006, Kip Beard, M.D. examined Claimant at the request of the State disability determination service. Dr. Beard diagnosed left carpal tunnel syndrome, mild, chronic cervical and lumbosacral strain with cervical spondylosis, by history. On examination, Claimant had some mild pain and tenderness with preserved motion. Reflexes were symmetric. There were no findings of myelopathy or radiculopathy. Regarding carpal tunnel syndrome, provocative testing was mildly positive on the left. Dr. Beard did not appreciate atrophy of the hand. Manipulation was well-preserved, as was grip strength. (Tr. at 283.)

On September 8, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with occasional postural limitations. Claimant was limited in handling, fingering and feeling and should avoid concentrated exposure to vibration and hazards. (Tr. at 285-92.)

On September 8, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 293-305.)

The record includes treatment notes and other evidence from FamilyCare dated August 4, 2005, through November 17, 2006. (Tr. at 307-43.) On August 4, 2005, Claimant had abdominal pain. (Tr. at 333.) Claimant underwent a CT of the abdomen and pelvis, both of which were normal. (Tr. at 335.) On August 18, 2005, Claimant was diagnosed with irritable bowel syndrome and gastroesophageal reflux disease. (Tr. at 331.) On September 1, 2005, Claimant's heartburn was improving on Prevacid. Claimant complained of depression and anxiety and back pain. (Tr. at 330.) On February 23, 2006, Claimant complained that she was tired and depressed. Her diagnoses included GERD, tobacco abuse and depression. (Tr. at 323.) On July 31, 2006, Claimant complained of stomach problems after being kicked in the stomach four weeks earlier. She also complained of low back pain. (Tr. at 317.) On November 14, 2006, Claimant reported with complaints of low back pain. Claimant was scheduled for a colonoscopy. (Tr. at 308.)

On January 31, 2007, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 355-68.)

On February 7, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with occasional postural limitations, that she had limitations in fingering, feeling and handling, and that she should avoid concentrated exposure to

vibration. (Pl.'s Br. at 369-76.)

On May 30, 2007, Claimant underwent an MRI of her knee, which showed mild degenerative changes of the medical compartment of the right knee. (Tr. at 385.)

On August 30, 2007, Louann Munday, APRN, BC-FNP, BC-ADM, examined Claimant in connection with her attempts to obtain a medical card and SSI benefits. She diagnosed alcohol dependence, major depressive disorder and post traumatic stress disorder on Axis I and deferred an Axis II diagnosis. She rated Claimant's GAF at 68. (Tr. at 393.)

The record includes chiropractic treatment notes and other evidence dated October 14, 2007, through November 2, 2007. (Tr. at 395.) On October 14, 2007, x-rays of Claimant's cervical spine were negative. (Tr. at 405.) X-rays of Claimant's cervical spine on March 31, 2003, showed degenerative facet changes inferiorly. (Tr. at 404.)

Evidence submitted to the Appeals Council

On April 18, 2008, Claimant was hospitalized following complaints of dysphoria. Claimant had told a friend she did not want to live anymore. Claimant reported a remote history of bipolar disorder and an alcohol problem several years ago. Claimant reported that she had musculoskeletal pain, which was worse following a physical fight with her son. Claimant reported that she ran out of Paxil and felt that the lack of this medication

9

adversely impacted her. (Tr. at 411.) Claimant was admitted for depression and the possibility of bipolar disorder. (Tr. at 412.)

The record submitted to the Appeals Council includes a West Virginia Department of Health and Human Resources Medical Review Team (MRT) form completed by Lisa E. Downham, M.D. on April 29, 2008. Dr. Downham treated Claimant for chronic pain syndrome. She diagnosed depression/anxiety, osteoarthritis, and history of alcohol abuse. She opined that Claimant was unable to work. (Tr. at 434.)

The record includes evidence from Beacon Southway Outpatient Services dated April 28, 2008, through May 8, 2008. Claimant received outpatient treatment during this time, but only attended the program intermittently because of transportation problems and a period of illness. On admission, she reported she had been dealing with depression for the past 20 years and over the past 5 months it had been worsening. (Tr. at 438.) Her mood improved with medication and treatment. (Tr. at 439.) Her diagnoses were major depressive disorder, recurrent severe, anxiety disorder, not otherwise specified, history of alcohol dependence and cannabis abuse on Axis I. An Axis II diagnosis was deferred. On admission and discharge, Claimant's GAF was rated at 50. (Tr. at 438.) Due to failure to continue the program, Claimant was administratively discharged from the program. (Tr. at 439.)

The record includes additional treatment notes from Familycare

dated December 8, 2008, through April 29, 2008. (Tr. at 466-69.) On October 8, 2008, Claimant reported one month of severe right foot pain. She was diagnosed with arthritis and right foot pain and anxiety disorder. (Tr. at 468.) On October 9, 2008, x-rays showed that Claimant fractured the base of her fifth metatarsal on the right foot. She was prescribed a boot. (Tr. at 470.) On December 8, 2008, Claimant reported continued right foot pain. Her diagnoses included bipolar disorder and degenerative joint disease. (Tr. at 469.)

On August 14, 2008, Claimant underwent a mammogram, which was benign. (Tr. at 472.)

The record includes a crisis evaluation and other evidence from Alexander V. Otellin, M.D. dated August 14, 2008. (Tr. at 488-501.) Dr. Otellin diagnosed bipolar 2 disorders and breathing related sleep disorder on Axis I and rated Claimant's GAF at 60. (Tr. at 490-91.) On September 11, 2008, Claimant showed slight response to treatment, though she continued to have panic attacks and depression. (Tr. at 496.) Claimant's diagnoses remained the same, though the diagnosis of panic disorder with agoraphobia was added. (Tr. at 497.) On October 9, 2008, Claimant reported that she felt pretty good. Claimant had no serious mental status abnormalities. Neither depression nor mood elevation was evident. (Tr. at 498.) On November 5, 2008, Claimant reported dizzy spells and crazy dreams. Her panic attacks had stopped, but her anxiety

11

symptoms continued. (Tr. at 500-01.)

The record includes additional treatment notes from Mark S. Calfee, Claimant's chiropractor, dated October 2007, through July, 2008. (Tr. at 502-13.)

On October 30, 2008, Claimant reported to the emergency room complaining of back and abdominal pain. Claimant was diagnosed with diverticulosis without evidence of diverticulitis. (Tr. at 533-45.)

On November 4, 2008, Claimant was seen for a urinary tract infection. (Tr. at 529.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because evidence submitted to the Appeals Council provides a basis for potentially changing the ALJ's decision. (Pl.'s Br. at 4-6; Pl.'s Reply at 1-3.)

The Commissioner argues that the evidence submitted to the Appeals Council does not relate to the time period at issue before the ALJ, which ended on March 24, 2008, the date of the ALJ's decision. The Commissioner points out that the Claimant does not challenge the ALJ's decision and that the evidence submitted to the Appeals Council does not provide a basis for changing the ALJ's decision. (Def.'s Br. at 1-14.)

Pursuant to 20 C.F.R. § 416.1470(b) (2008),

> (b) [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence

12

> only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

In the instant matter, the Appeals Council acknowledged the additional evidence submitted by Claimant (Tr. at 1, 4, 406-556), evaluated it and stated that "[w]e found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. at 2.) Thus, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner.

The Appeals Council specifically incorporated the new evidence into the administrative record. As a result, the court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991).[1] In other words, "[i]f, upon consideration of the entire record, including the new evidence, the district court cannot conclude that the ALJ's decision was supported by substantial evidence, remand should be ordered. If, for example,

---

[1] Claimant (at least initially) and the Commissioner focus on the analysis provided in <u>Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir. 1985) for the submission of new and material evidence that would warrant remand by this court pursuant to sentence six of 42 U.S.C. § 405(g). However, the Appeals Council incorporated the new evidence submitted by Claimant into the record, but declined review, thus requiring this court to conduct its analysis under <u>Wilkins</u>.

the new evidence contains an opinion of a treating physician that claimant was disabled, that opinion not having been addressed or contradicted by other evidence in the record, the great weight accorded to such an opinion would require remand." King v. Barnhart, 415 F. Supp.2d 607, 610-11 (E.D. N.C. 2005).

The court proposes that the presiding District Judge find that the evidence submitted to the Appeals Council might reasonably have changed the ALJ's decision. In particular, the ALJ determined in his decision that Claimant did not suffer a severe mental impairment. Yet the evidence submitted to the Appeals Council indicates that on April 18, 2008, less than one month after the ALJ's decision on March 24, 2008, Claimant was hospitalized following complaints of dysphoria. Through May of 2008, Claimant received outpatient treatment and was diagnosed with major depressive disorder, *recurrent severe*, anxiety disorder, not otherwise specified, history of alcohol dependence and cannabis abuse on Axis I. (Tr. at 428.) At the time of admission and discharge to Beacon Southway Outpatient Services, Claimant's GAF was rated at 50.[2] In addition, on April 29, 2008, Dr. Downham, who

---

[2] A GAF between forty-one and fifty indicates "[s]evere symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

treated Claimant[3], completed a West Virginia Department of Health and Human Resources Medical Resources Medical Review Team (MRT) form. Dr. Downham treated Claimant for chronic pain syndrome. She diagnosed depression/anxiety, osteoarthritis, and history of alcohol abuse. She opined that Claimant was unable to work. (Tr. at 434.) While this evidence postdates the ALJ's decision by weeks to a month, it does contain evidence that Claimant's mental condition was recurrent and, therefore, merits further consideration. Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990) (explaining that medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision).

This evidence, coupled with the evidence of record before the ALJ from Ms. Munday and Ms. Reynolds, medical sources who examined Claimant during the relevant time period, suggests that further evaluation is warranted as to whether Claimant suffers a severe mental impairment.

Claimant's case is certainly complicated by her alcohol addiction. On the one hand, the ALJ acknowledges that Claimant "has a problem with substance abuse," but also states that the record "does not reveal any work-related limitation of function as a result of such." (Tr. at 17.) The ALJ relied on the testimony

---

[3] It is not entirely clear to the court how long Dr. Downham treated Claimant or whether there are other treatment notes from her prior to the ALJ's decision.

of Dr. Phelps, the medical expert who testified at the administrative hearing. He testified that

> in the absence of alcohol, which the claimant has not been free from long enough for a proper appraisal, he [Dr. Phelps] suspects that the claimant would have minimal problems with regard to depression and anxiety. The claimant was able to concentrate fairly well on mental status exam with Ms. Reynolds. On the Digit Span subtest of the WAIS-III the claimant obtained a scaled score of 11, indicating the attention and concentration were within normal limits. She likely self medicates with alcohol to deal with anxiety.

(Tr. at 18.) The ALJ ultimately determined, based on evaluation of the "B" criteria, that Claimant did not have severe mental impairments. (Tr. at 17.)

In light of the evidence submitted to the Appeals Council, particularly that related to her hospitalization and outpatient treatment and the Assessment completed by Dr. Downham on April 29, 2008, indicating that Claimant was disabled, the court proposes that remand is in order.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d)

16

and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

   November 18, 2010                              *Mary E. Stanley*
       Date                                     Mary E. Stanley
                                             United States Magistrate Judge